UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES CORNELL PARKS,<br><br>         Plaintiff,<br><br>    v.<br><br>TULALIP RESORT CASINO,<br><br>         Defendant. | CASE NO. C07-1406RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant's motion to dismiss. (Dkt. #17.) Defendant argues that Plaintiff's complaint should be dismissed because it possesses sovereign immunity from suit as a federally recognized tribe. Alternatively, Defendant argues that: (1) Tulalip Tribes is exempt from the requirements of Title VII of the Civil Rights Act; (2) Plaintiff has not exhausted federal or tribal administrative remedies; and (3) Plaintiff has not exhausted his tribal court remedies. Plaintiff, appearing *pro se*, responds that he has established subject matter jurisdiction because the Fourth Circuit Court of Appeals has "held a decision over a Section 1981 claim regarding jurisdiction on a matter similar to this." (Dkt. #18 at 1.) Plaintiff further argues that: (1) he did not file suit against the Tulalip Tribes as an entity that governs the tribe members and government programs; (2) he contacted the EEOC and Human Rights Commission, but was unable to obtain assistance from these organizations because the matter "involved an Indian reservation"; and (3) he did not file a grievance because he was misled to believe that he did not meet the requirements for the Safety Manager position. (*Id.*)

For the reasons set forth below, the Court shall GRANT Defendant's Motion to Dismiss.

MEMORANDUM ORDER
PAGE - 1

## II. DISCUSSION

### A. Background

Plaintiff James C. Parks filed this action against Defendant Tulalip Resort Casino.[1] (Dkt. #5.) The Casino is owned and operated by the Tulalip Tribes ("Tribe") d/b/a the Tulalip Gaming Organization ("TGO"). (Dkt. # 17.) The Tribe is a federally recognized Indian tribe (72 Fed. Reg. 13647 (Mar. 22, 2007)) and governed by an elected board of directors (Sheldon Aff. at ¶ 2). The board is authorized to promulgate ordinances subject to review by the Secretary of the Interior. The board also oversees the TGO, and the TGO President reports directly to the board. Additionally, TGO contracts in excess of $100,000 must be approved by the board.

Plaintiff, an employee of the Casino, alleges that Defendant discriminated against him based upon his race. (Dkt. #5.) Specifically, Plaintiff, who is African-American/ Native-American, contends that Defendant did not promote him to the position of Safety Manager even though he was qualified for the position. Further, Plaintiff alleges he was subjected to a hostile work environment, which included retaliatory harassment.

Plaintiff asserts that he was qualified for the Safety Manager position and provided documentation to demonstrate his qualifications for the position. Around the same time, Plaintiff alleges that Defendant created another position in the same facility. Plaintiff further contends he discovered, during an internal investigation, that the job description was changed by Defendant's representative to disqualify Plaintiff from the position.[2]

After this incident, Plaintiff alleges that the Defendant created a hostile work environment, which included harassment of the Plaintiff and his significant other, resulting in

---

[1] In its motion to dismiss and affidavits in support of the motion to dismiss, Defendant incorrectly asserts that the Defendant in this case is the Tulalip Tribes or the Tulalip Gaming Organization (TGO). (*See* Kettler Aff. at ¶ 5; Lacy Aff. at ¶ 3; Sheldon Aff. at ¶ 4.) Whether the Tulalip Resort Casino is an arm of the Tulalip Tribes or the TGO is a legal conclusion that the Defendant is not entitled to make. The issue of whether the Tulalip Resort Casino is an arm of the Tulalip Tribes or the TGO will be discussed *infra*.

[2] Based on the pleadings, it is unclear whether Plaintiff alleges that the job description was changed to disqualify him for the Safety Manager position or for the newly created position.

MEMORANDUM ORDER
PAGE - 2

Plaintiff's significant other being transferred out of the facility. Plaintiff also alleges that he "was subjected to acts of harassment [by the Defendant], that he believe[d] to be retaliatory including being reprimanded."

Based on these events, Plaintiff brought the instant lawsuit claiming racial discrimination and harassment. Defendant now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[3]

### B. Standard of Review

A motion to dismiss under Rule 12(b)(1) addresses the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving that the court has jurisdiction to decide the case. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). In resolving a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not restricted to allegations in the complaint, but may consider materials outside the pleadings, such as affidavits or testimony. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing, rely on affidavits or any other evidence properly before the court."); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The district court takes the allegations in the plaintiff's complaint as true and draws all reasonable inferences in his favor when considering a 12(b)(1) motion to dismiss. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### C. Sovereign Immunity

Based upon the principle of sovereign immunity, which is a matter of subject matter jurisdiction, defendant moves to dismiss all claims because claims cannot be brought against Indian tribes. *Hartman v. Golden Eagle Casino*, 243 F. Supp. 2d 1200, 1202 (D. Kan. 2003); *see also Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989), *overruled on other grounds by C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411 (2001) (noting "the issue of tribal sovereign immunity is jurisdictional in

---

[3] Notably, Defendant did not submit a reply to Plaintiff's response to the motion to dismiss.

MEMORANDUM ORDER
PAGE - 3

nature").

Courts recognize tribal sovereign immunity in order to further tribal self-governance and out of respect for tribal sovereignty. *See Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g. P.C.*, 476 U.S. 877, 890 (1986) ("[Both] the tribes and the Federal Government are firmly committed to the goal of promoting tribal self-government. . . .") (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334–336, and n.17 (1984)); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978) (acknowledging respect for tribal sovereignty and congressional plenary authority). Moreover, tribal sovereign immunity is recognized as "a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes*, 476 U.S. at 890.

Thus, it is well settled that tribes are immune from lawsuits in federal courts absent Congressional abrogation or a clear waiver by the tribe. *See Kiowa Tribe v. Mfg Technologies, Inc.*, 523 U.S. 751, 754 (1998); *Santa Clara Pueblo*, 436 U.S. at 58. A waiver of tribal sovereign immunity "may not be implied." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1047 (9th Cir. 2006) (citing *Santa Clara Pueblo*, 436 U.S. at 58 (explaining that a waiver of immunity "must be unequivocally expressed")). The Supreme Court has extended tribal sovereign immunity to tribes' commercial and governmental activities. *Kiowa*, 523 U.S. at 760. This immunity extends to entities established by a tribe to conduct activities when the entity functions as an arm of the tribe. *Allen*, 464 F.3d at 1046l; *see also Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006) (holding that a housing authority formed by a tribe entitled it to sovereign immunity). In contrast, immunity has not been extended to tribally chartered corporations that are completely independent of the tribe. *See Dixon v. Picopa Constr. Co.*, 772 P.2d 1104, 1109 (Ariz. 1989).

The determination of a tribal entity's entitlement to sovereign immunity is not an issue of whether the entity's activity may be characterized as a business, but "whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Allen*, 464 F.3d at 1046. In *Allen*, the Ninth Circuit focused on three of the casino's activities related to the tribe's ownership and operation of the casino to determine that the casino functioned as an arm

MEMORANDUM ORDER
PAGE - 4

of the tribe, such that it was entitled to sovereign immunity.[4] *Id*. at 1047. First, the creation of the casino was dependant upon several layers of government approval. *Id*. at 1046. Specifically, the court cited to the Indian Gaming Regulatory Act ("IGRA") and a compact between the tribe and state, so that the gaming activities were conducted solely under the auspices of the tribe. *Id*. Second, the purpose of the casino was to promote "'tribal economic development, self-sufficiency, and strong tribal government,'" and not solely to produce revenue. *Id*. Third, granting sovereign immunity to the casino protected the tribe's treasury, which was one of the purposes of sovereign immunity, and benefitted the tribe economically and otherwise. *Id*. at 1047.

In the instant case, defendant is entitled to sovereign immunity as an arm of the Tribe for two reasons. First, Plaintiff has not asserted that Congress has abrogated or the Tribe has waived immunity from suit. Plaintiff has not made this showing, and Defendant has asserted that the TGO has not waived its right of sovereign immunity. (Kettler Aff. at ¶ 3; Lacy Aff. at ¶ 6; Sheldon Aff. at ¶ 4.) Plaintiff has also not demonstrated that Congress has abrogated the Tribe's sovereign immunity.

Second, the activities of the Defendant Casino are similar to those of the casino in *Allen* such that the Defendant's activities are properly deemed to be those of the tribe. The creation of the Casino depended on several layers of government approval. The Tribe adopted Tribal Gaming Ordinance No. 55 ("T.G.O. 55") pursuant to the IGRA, 25 U.S.C. §§ 2701 *et seq.*, which established the TGO. (Kettler Aff. at ¶ 2.) In turn, the TGO established three gaming facilities, including Defendant Tulalip Resort Casino. (*See* Kettler Aff. at ¶ 4.) As such, multiple layers of government approval were necessary for the Defendant to conduct gaming activities permitted solely under the auspices of the Tribe.

Additionally, the purpose of the TGO, and in turn, Defendant Tulalip Resort Casino as a

---

[4] California state courts have also held that tribal casinos are entitled to sovereign immunity. *See Redding Rancheria v. Super. Ct.*, 88 Cal. App. 4th 384, 388–89, 105 Cal. Rptr. 2d 773 (2001) (holding an off-reservation casino owned and operated by a tribe entitled to sovereign immunity as an arm of the tribe); *Trudgeon v. Fantasy Springs Casino*, 71 Cal. App. 4th 632, 642, 84 Cal. Rptr. 2d 65 (1994) (recognizing sovereign immunity of a for-profit corporation formed by a tribe to operate the tribe's casino).

1  part of the TGO, was "to promote Tulalip tribal self-sufficiency, economic development,
2  employment, job training, and a strong Tulalip tribal government, and to fund and provide
3  essential social programs and services for tribal members." (Dkt. # 17; citing T.T.O. 55.1
4  (2005).) These goals were similar to the ones in *Allen* that the Ninth Circuit found to be
5  indicative that the casino's activities were properly deemed to be those of the tribe.

6  Lastly, while the Defendant has not explicitly asserted that granting sovereign immunity
7  to the Casino protected the Tribe's treasury, the Casino benefits the Tribe economically and in
8  other ways as indicated above. As Defendant asserted, proceeds generated by the TGO are
9  dispersed in accordance with a Revenue Allocation Plan adopted by the Tribe's board of
10 directors and approved by the Secretary of the Interior. These proceeds "go directly to the
11 provision of services for the Tribe and its members[.]" (Dkt. # 17, citing Sheldon Aff. at ¶ 6.)

12 For these reasons, the Defendant's activities are such that the Defendant is an arm of the
13 Tribe and is ultimately entitled to sovereign immunity. As this ruling is dispositive of the action,
14 the Court finds it unnecessary to address the remaining arguments presented by the parties.
15 Accordingly, Plaintiff's claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### III. CONCLUSION

17 Having reviewed Defendants' motion, Plaintiff's response, the declarations and exhibits
18 attached thereto, and the remainder of the record, the Court hereby finds and orders:

19 (1) Defendant's Motion to Dismiss (Dkt. #17) is GRANTED.

20 (2) The Clerk is directed to forward a copy of this Order to all counsel of record and *pro*
21 *se* Plaintiff at the following address: 7102 14th Ave NE, Tulalip, WA 98271.

23 DATED this __19__ day of March, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE